IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HARRIS N.A., )
 )  Case No. 07 C 1847
           Plaintiff, )
 )  Judge Virginia M. Kendall
v. )
 )
UNITED STATES OF AMERICA, )
 )
           Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Harris N.A. ("Harris") sued the United States of America ("United States") under 26 U.S.C. § 7426(a)(1), asserting in a single claim that the Internal Revenue Service ("IRS") had wrongfully levied property in which Harris held a superior security interest and thus is entitled to repayment of the funds. Harris moves for summary judgment on the claim. For the reasons stated below, Harris's motion for summary judgment is granted.

## STATEMENT OF UNDISPUTED FACTS

The claim arises from transactions involving Harris, UBM, Inc. ("UBM"), and the Public Building Commission of Chicago ("PBC"). Between December 2002 and March 2003, UBM contracted with the PBC to construct three police stations in Chicago. (Def. 56.1 Resp. ¶¶ 6, 7.)[1]

On June 21, 2004, UBM executed a Security Agreement in favor of Harris, a national banking association, giving Harris a security interest in UBM's receivables. (Def. 56.1 Resp. ¶¶ 1, 3.) Harris

---

[1] Citations to "United States' Response to Harris N.A.'s Statement of Material Facts in Support of its Motion for Summary Judgment" have been abbreviated to "Def. 56.1 Resp." Citations to "Additional Facts in Support of United States' Opposition to Harris N.A.'s Motion for Summary Judgment" have been abbreviated to "Def. 56.1 Add'l Facts." Because Harris did not controvert the additional facts alleged by the United States, the Court deems those facts to be admitted. *See* L.R. 56.1(a).

1

filed both the Security Agreement and a Uniform Commercial Code Financing Statement with the Illinois Secretary of State's office on July 1, 2004. (*Id.*)

Subsequently, the IRS filed Notices of Federal Tax Liens against the PBC on November 29, 2005, May 30, 2006, June 19, 2006, and July 28, 2006 for past due withholding taxes in the amounts of $157,204.38, $131,767.87, $1,863.91 and $450.25, respectively. (Def. 56.1 Add'l Facts ¶ 1.) By February 2006, UBM substantially completed the construction of the police stations. (Def. 56.1 Resp. ¶ 7.) On August 7, 2006, the IRS served the PBC with a "Notice of Levy," which indicated that UBM owed the IRS $563,282.87 in withholding taxes, plus interest. (Def. 56.1 Resp. ¶¶ 8-9). At the time, UBM owed Harris $1,230,898.73 under the Security Agreement, and the PBC was in possession of at least $588,000 due to UBM for substantial completion of the police station projects.[2] (Def. 56.1 Resp. ¶¶ 10, 16.) The $588,000 due to UBM had been due since at least June 2005. (Def. 56.1 Resp. ¶ 10.) Harris became aware of the Notice of Levy when the PBC disclosed it in a related state court mechanic's lien lawsuit, *Reinke Interior Supply Co., Inc. v. Public Building Comm'n of Chicago,* No. 04 CH 18200 ("Mechanics' Lien Litigation"). (Def. 56.1 Resp. ¶ 11.) Before the Mechanics' Lien Litigation, Harris had notified the PBC that it held a prior perfected security interest in any funds held by the PBC that were due and owing UBM for the construction of the police

---

[2] In its Response to Harris's Statement of Facts, the United States neither admits nor denies that the PBC was in possession of at least $588,000 due to UBM for substantial completion of the police station projects. Rather, the United States claims that "[f]urther discovery is necessary to determine whether any funds were due UBM from the PBC." Def. 56.1 Resp. ¶ 10. All material facts set forth in the movant's statement of facts "will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). The United States does not controvert Harris's claim with respect to UBM's receivables with its statement that further discovery is necessary. In order to controvert the movant's statement of material facts, the opposing party must include "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to . . . the record." L.R. 56.1(b)(3)(B). The United States does not cite to the record to show a dispute regarding the amount owed UBM at that time. The Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (citing *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). Accordingly, the Court deems this fact admitted. *See* L.R. 56.1(b)(3)(C).

stations. (Def. 56.1 Resp. ¶ 12.) On November 28, 2006, the IRS served a second Notice of Levy upon the PBC, indicating that UBM owed $588,352.43, plus interest and penalties. (Def. 56.1 Add'l Facts ¶¶ 2-3.)

In the Mechanics' Lien Litigation, Harris filed an answer on December 1, 2006 in order to formally apprise the PBC of Harris's security interest in UBM's receivables. (*Id.*) Accordingly, the PBC sought to name the IRS as a party in the Mechanics' Lien Litigation to allow for an adjudication of the priority as to the funds held by the PBC and claimed by the IRS and Harris. (Def. 56.1 Resp. ¶ 13.) However, on December 7, 2006, the PBC paid the IRS $588,352.43, the full amount of withholding taxes and interest indicated in the second Notice of Levy. (Def. 56.1 Resp. ¶14.) The PBC then notified interested parties in the Mechanics' Lien Litigation of the payment, and further advised that if they had a claim to the funds paid to the IRS, they needed to initiate litigation with the IRS in federal court to obtain those funds. (*Id.*) On April 4, 2007, Harris initiated this action to determine its priority over the $588,352.43 paid to the IRS and to obtain an order requiring the IRS to pay it the $588,352.43 received from the PBC. (Def. 56.1 Resp. ¶ 15.)

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence

that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## **DISCUSSION**

The Federal Tax Lien Act describes the rights of competing creditors when the United States holds a lien for unpaid taxes. 26 U.S.C. §§ 6321-6326. The Tax Lien Act does not create property rights; rather, it "attaches consequences, federally defined, to rights created under state law." *United States v. Swan*, 467 F.3d 655, 656 (7th Cir. 2006).

Liens imposed under the Tax Lien Act arise at the time the assessment is made. 26 U.S.C. § 6322. Such liens are generally valid without filing a Notice of Federal Tax Lien, except as against certain persons, including holders of a security interest in the levied property. 26 U.S.C. § 6323. For the lien to be valid against a secured creditor, the IRS must file a Notice of Federal Tax Lien. *Id.* When the lien arises under state law, "the priority of each statutory lien . . . must depend on the time it attached to the property and became choate." *United States v. City of New Britain*, 347 U.S. 81, 86 (1954). A lien becomes choate "when the identity of the lienor, the property subject to the lien,

4

and the amount of the lien are established." *Id.* at 84. With respect to choate liens, "the priority of the federal tax lien provided by 26 U.S.C. § 6321 as against liens created under state law is governed by the common-law rule -'the first in time is the first in right.'" *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 87 (1963). However, even if the security interest created by a commercial transaction enjoys priority over the federal tax lien under the "first in time, first in right" rule, the priority does not continue in subsequently-acquired collateral for an unlimited time. Rather, the priority only continues "to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax filing." 26 U.S.C. § 6323(c)(2). Therefore, the secured interest in the account receivable must come into existence within forty five days after the IRS files its Notice of Federal Tax Lien in order to take priority over the federal tax lien. If the United States wrongfully levies property, any person who claims an interest in the property has a federal cause of action to recover the property from the government. 26 U.S.C. § 7426.

To evaluate Harris's interest in the levied funds, this Court must first determine Harris's status with respect to the levied property, UBM's receivables. Even if Harris held a perfected interest in UBM's receivables, the interest is superior to the government's interest only to the extent that Harris acquired its interest within the forty five days after the IRS filed its Notice of Federal Tax Lien. *See* 26 U.S.C. § 6323(c)(2). Here, the undisputed facts establish that as of July 2005, Harris held a choate security interest in at least $588,000 of UBM's receivables arising from UBM's work for the PBC on the police stations. As of July 1, 2004 Harris had obtained and recorded its security interest against UBM's receivables. However, that interest in UBM's receivables arising from the PBC contract did not become choate until the receivables actually arose. As UBM constructed the police

5

stations for the PBC, UBM held an account receivable for at least $588,000. Therefore, Harris had a choate security interest in UBM's receivables as of July 2005, when UBM had earned payment for its work on the police stations, because as of that date, the identity of the lienor (Harris) was established, the property subject to the lien (UBM's receivables from the police station projects) was established, and the amount of the lien (at least $588,000) was established. *See New Britain*, 347 U.S. at 84 (establishing the three requirements for a security interest to become choate).

Because the IRS filed its notices on November 29, 2005, May 30, 2006, June 19, 2006 and July 28, 2006, its liens became effective as to UBM on those dates. *See* 26 U.S.C. § 6322. Moreover, Harris's choate security interest enjoyed priority over the IRS lien with respect to any UBM receivables that arose before the 46th day after November 29, 2005. *See* 26 U.S.C. § 6323(c)(2)(A). Because Harris's choate interest arose in July 2005, before the IRS even filed its first Notice of Federal Tax Lien in November 2005, Harris's interest enjoyed priority over the IRS under the "first in time, first in right" rule. Thus, the IRS levy of UBM's receivables was wrongful because Harris held a superior interest in that property. Accordingly, Harris has demonstrated that the IRS has wrongfully levied UBM's receivables as a matter of law, and Harris is therefore entitled to summary judgment.

## **CONCLUSION**

For the reasons stated herein, Harris's motion for summary judgment is granted. So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   September 9, 2008